And now at this term, the court gave the following opinions.
Horistblower, G. J.
Francis Steelman the lessor of the plaintiff, claims under the Will of his grandfather, James Steelman. The defendant, on the trial, set up the statute of limitations, as a defence. Hence it became material to ascertain the time of the testator’s death. If he died in October 1812, as the defendant insists he did, then the plaintiff is barred ; as this action was not commenced until December, 1832. To shew that James Steel-man, the testator, died in October, 1812, the defendant offered, and the court admitted in evidence, a book purporting to be a record of admissions into the county poor house, and of the times when paupers died, or were discharged therefrom. By an entry in that book, it appeared that the testator, James Steelman, was received into the poor house, on the tenth of December 1805, at the age of seventy-six years and upwards: and that he died there on the twenty-eighth of October, 1812.
The plaintiff complains, that this book was improperly admitted. First. Because it was not a book or register, kept in pursuance of any direction in the statute, and equally unknown to, and therefore inadmissible upon any principle of the common law. Secondly. If under any circumstances, it was admissible evidence, yet it was improperly received in this case; the entry therein, which was relied upon by the defendant, not having been proved to be in the hand-writing of the keeper of the poor house, or of any other known officer of that institution.
If this testimony had been material, or could have had any influence on the verdict of the jury, I should hesitate before I gave it my sanction. I do not say, however, that it was unlawful evidence. It is not necessary to give any opinion on that point. It was the work of supererogation on the part of the defendants, to introduce it; because the evidence on the part of the plaintiff on this point, went to shew, that the testator had died *68 more than twenty years before the commencement of this suit.
Abraham Albertson, the very first witness called by the plaintiff, testified that James Steelman died in the poor house, and spoke of it, as an event which had happened about twenty-five years ago. Nor did the plaintiff give any evidence whatever to shew a right of entry within twenty years before suit brought.
Where justice has been done by a verdict, though there has been a mis-direction by the judge, a new trial will not be granted; nor will a judgment be reversed in such case,' in Error. Snyder v. Findley, Coxe’s R. 78. The State v. Wells. Ibid,. 424. Campfield v. Ely, 1 Green 150. Ayres v. Van Lieu, 2 South. R. 771. 2 Wend. R. 596. 3 Ibid. 330.
So where the verdict is precisely such, as the jury ought to have rendered upon the plaintiff’s own evidence, a new trial will not be granted, because the judge admitted unlawful evidence, on the part of the defendant, if that evidence was only corroborative of the facts, already proved by the plaintiff, and in this case the poor house book, whether competent or not, was only confirmatory of what the plaintiff’s witnesses had sworn to.
But Secondly. It is insisted on the part of the plaintiff, that the verdict is against law and evidence, upon the ground that even admitting the period of twenty years or more had elapsed before the action was brought, yet that the lessor of the plaintiff, at the time his right of action accrued, was, and ever since had been non compos, or insane. Upon this point, there was evidence on both sides. It was a question of fact, to be settled by the jury, under the advice and direction of the court. No complaint is made to us of the charge delivered to the jury, by the judge before whom the cause was tried : the question was properly submitted to the jury, and they have settled it.
Let the rule to shew cause be discharged, and judgment be entered for the defendant.
Ford, J.
Francis Steelman, the lessor of the plaintiff, was entitled, in remainder, to the premises in question, after the death of his uncle, James Steelman, who was tenant for life; unless his right was barred, by a neglect to enter, within twenty years after his uncle died; whereby the date of his uncle’s death, became a material fact. One of his witnesses testified, “that *69 James Steelman died in the poor house, may be twenty-five years ago.” The other party then produced the book of the poor house, for the county of Gloucester, containing an entry in these words, “James Steelman, admitted December 10th, 1805, aged 76. Died, 10th month, 28th, 1812;” and he proved by the present steward of the poor house, that Richard Lines became steward the 15th of June 1803, and continued such for sis; years ; that John Wilkins succeeded him, and held the office for two years; and that Nathan Clifton succeeded him, and held it four years; the witness never saw either of them write; but he testified that the book produced, was kept in the poor house, as a record of the admissions and discharges of the inmates. Hereupon it was offered in evidence; but objected to by the plaintiff, as being a book not known in law; and no proof that the entrii s therein, wire in the hand-writing of either of the stewards. The judge admitted the book to go in evidence, and this admission is taken as one of the grounds for setting aside the verdict.
Though the law treats judicial records as evidence of Hie highest grade, it still extends great credit to those public 'writings which are of general concern ; and hence they are enumerated in almost every treatise, as a branch of important evidence. Bul. N. P. 247, Peak’s Ev. 51, Phil Ev. 302. Thus Bul. N. P. 249, “ The register of the navy office, with proof of the method there used, to return all persons dead, with the mark Dd. is sufficient evidence of a death.”' So 1 Phil Pv. 312, “Bank books are good evidence to prove the transfer of stock,” and Peak’s Pv. 90, “ Corporation books concerning the public government of a city or town, when publicly kept, and the entries made by a proper officer, are received as evidence of the facts contained in them.” Then why should not this poor house book be evidence of the facts therein contained ? The Board of Chosen Freeholders is a corporation for the government of the county, and by Rev. Laws, 323, Sea. 31, they own the poor house, appoint its officers, and govern it under their bye-laws; therefore the book, which they publicly keep, is just as good evidence, as that of a city or town ; and cannot be deemed inferior to the register of the navy office, or the daily book of a prison. And as to its not being known in law, it is a fair legal presumption, that a book which is actually kept, under the government of the corporation, is kept by their *70 order, either written or verbal, which in either case will make it a corporation book. It is said there was no evidence, that the entries were made in the hand writing of the proper officer, that is, of Lines, at the time of the alleged admission of James Steelman, nor of Clifton, at the date of his alleged death ; founded on what was said, probably, in Rex v. Mothersell, 1 Stra. 93, “that corporation books were generally allowed to be given in evidence, when publicly kepi, and the entries made by the proper officer.” But the court neither said, nor meant, that the latter condition was to be proved.by direet evidence. Who could prove the hand writing of an entry made 50 or 100 years ago? The evidence of it will arise, on simply proving the former part. If it had been publicly kept, as a genuine book, that is prima, facie evidence, till the contrary is shewn, that the entries were made by the proper officer; he may employ an amanuensis, either by reason of sickness, necessary absence, or pressure of other duties; but if the corporation, who must be presumed cognizant of their own proceedings, still keep it as their public genuine book, it will be presumed that the entries were so made with their knowledge and approbation. And Mothersells’ case fully supports this position; when the book would have been received in evidence if the presumption had not been overcome by proof that the book, purporting to be minutes of the corporation ten years ago, was all in the hand writing of the prosecutor’s clerk, who was no officer of the corporation; whereupon the judge enquired of the prosecutor, where it had been kept for those ten years, and receiving no satisfaction on this point, he rejected it; clearly implying, that if it had been publicly kept by the corporation for those ten years, as a genuine book, he would have received it, without regard to the hand-writing. Hence it is the common practice, to receive sworn copies of these public writings, on the simple proof of. their being taken from originals preserved in the public offices. . Indeed the matter of original hand-writing could never be tried on the production of a copy ; and yet it was long ago settled, in the case of Lynch v. Clark, 3 Salk. 153, “ that when the original is of a public nature, and would be evidence if produced, an-immediate sworn copy thereof is evidence.” Every public writing will therefore be presumed to be genuine, from the fact of its being publicly kept as such, until it is dis *71 credited by the production of contrary evidence, as was done in the case of Rex v. Mothersell. The only exception to this rule, is in 10 Johns. 154, where the corporation book was offered in evidence in favor of the corporation itself, by whom it was made, and who had it in its keeping, which has no bearing on the present case.
It was suggested as another objection to the trial, that a witness testified by parol, to a sale of the premises, by the executors of James Steelman, without producing the deed, But it seems to have been treated only, as the utterance of idle words, in a general narrative, and to have been treated so by both parties; for the evidence was sufficiently worthless on the face of it; the defendant set up no claim under it, and the plaintiff treated it as' unworthy of even a motion to over-rule it; at least no such motion appears by the state of the case to have been made; and having then waived the making of any formal objection as unnecessary, it cannot be resorted to now, for setting aside the verdict.
Whether Francis Steelman was under such a degree of mental incapacity as would save his claims from being barred, under the proviso, in favor of persons insane, in the statute of limitations, was a question of fact, on which there was much evidence on both sides; and as the verdict is not against the weight of evidence, so manifestly as to justify the interference of the court, it cannot be set aside upon this ground. Yo sufficient matter appearing therefore in support of the rule to shew cause, it must be discharged.
Ryebson, J. concurred.

Rule Discharged.

Cited in Joslin v. N. J. Car Spring Co., 7 Vr. 147; State v. Ferguson, 2 Vr. 119; Freeman v. Headly, 4 Vr. 540.