JUDGE SIMPSON
delivered the opinion os the court:
This action of detinue was commenced in April, 1849, in the names of tbe administrators of John Clark, sr., deceased, against Solomon Trail, to recover certain slaves which were alleged by the plaintiffs to have been the property of their intestate. After the action had been pending for some time, the will of said John Clark, sr., was admitted to probate, and . James A. Clark, who was appointed executor therein, qualified as such, and took upon himself the execution of the will. Thereupon, in March, 1855, an order was made for the further prosecution of the action in his name as plaintiif, and to revive the suit against the administrators of Trail, the original defendant, he having in the mean time departed this life.
On the trial in the circuit court a judgment was rendered in favor of the defendants, from which Clark’s executor has appealed to this court.
Trail in his lifetime had been in the possession of the slaves in controversy for many years, claiming them as his own; and the defendants relied on the statute of limitations in bar of the action. It appeared that the slaves had belonged to John Clark, sr., before they came into the possession of Trail, and the principal question in the cause was, whether, under the circumstances which were proved on the trial, Clark’s title had been divested by the adverse possession of the defendants’ intestate.
In 1817, John Clark, sr., was, by the inquest of a jury, found to be a person of unsound mind, and a committee was appointed by the court to manage and control his estate. By an inquest held in 1826, it was found that his mind was restored, and an order of court was made, superseding the commission, and giving to him the possession and the control of his property. But in 1828 he was again found to be of unsound mind by another inquest, and a committee was again appointed to take possession of and manage his property. In 1844 he was found to be sane by the verdict of a jury; but the court before whom the inquest was held, not being satisfied of his capacity to manage his own estate, refused to make an order that it should be restored to his possession.
*38 Testimony was introduced upon the trial tending to show that he had been perfectly sane, and competent to manage his estate, for many years, until within a very short time before his death, which occurred in 1848. Whilst, on the other side, proof was made that he was of unsound mind before the inquisition of 1817, and had always afterwards been in that condition so long as he lived.
It did not certainly appear at what time, or in what manner, Trail acquired the possession of the slaves in contest; but it may be inferred, from the testimony, that he had the possession of them as early as 1827.
The application of the statute of limitations depends upon the construction that should be put upon the saving in the statute in favor of persons of unsound mind.
The plaintiff in the court below moved the court to instruct the jury, that if they believed, from the evidence, John Clark had been legally found to be a lunatic, before the slaves in contest were taken out of his possession, and that the court had appointed a committee to take charge of his person and property, and that said Clark had not been released from the effects of such finding, and from the control of his committee, from the time Trail got possession of the slaves until his death; or if they should find that Trail got possession of the slaves, before the inquest found in 1828, and the order then made appointing a committee to take charge of his person and his property, and that he continued under the charge of said last mentioned committee until his death, then, unless the time that intervened between his death and the bringing of this action, when added to the time that intervened between the commencement of Trail’s possession and the inquest of 1828, amounted to five years, the statute of limitations did not protect the defendants, and they should find for the plaintiff.
The court refused to give that instruction, but instructed the jury, that if at the time Trail obtained the possession of the slaves Clark was a lunatic, the bar by time would not operate against him until he was restored to his right mind. But if the jury should believe, from the evidence, that Clark, after Trail became possessed of the slaves, was restored to his right mind, *39 not merely for a moment or an hour, or a day, but for such a length of time as to enable him to have looked into his affairs and to have instituted an action to recover his rights, the statute of limitations commenced running, and would continue to x’un and form a bar, if more than five years elapsed from the time of his restoration, before this action was commenced.
On behalf of the appellant it is contended, that the saving in the statute operates in favor of a person of unsound mind, who has been legally found by an inquest to be such, and whose person and property have been subjected by an order of court to the control of a committee, until, by a like finding and order, he be restored to his rights as a person who is competent to their management, and that the circuit court erred in giving to the jury a different exposition of the law.
On the part of the appellees it is contended, that there was no error in the instruction of the court; but even if it were wrong, that still the judgment should be affirmed, because the appellant could not carry on the action in his own name, as the executor of Clark, when it had been commenced and prosecuted for some time in the names of other persons as Clark’s administrators.
The argument in favor of the position assumed on the part of the appellant is, that during the continuance of a commission of lunacy, the party is not allowed to alien his estate, even during a lucid interval, and therefore his disability is not removed until the commission shall have been superseded. And further, that the inquest finding the existence of the disability, being conclusive evidence of the fact, another inquest finding that the disability has ceased, ought, according to general principles, to be required as the only admissible evidence of the fact.
An inquest of lunacy, or of unsoundness of mind, although conclusive evidence of the condition of the party at the date of the inquest, is only prima facie evidence of his. condition at a subsequent period. Having been found a lunatic, the law presumes the state of his mind to continue unchanged until the contrary be made manifest. It is this presumption of the law that makes the inquest even prima facie evidence of his insan. *40 ity at a subsequent time. Being a mere presumption, it may be repelled by oral testimony. There is no rule of evidence ■which requires another inquest to be found, in order that this presumption may be thereby rebutted. This part of the argument, therefore, does not sustain the position contended for.
The saving in the statute of limitations applies to the disability of unsoundness of mind, and continues until the disability be removed, and not afterwards. It does not embrace such disabilities as the law may create for the protection of persons who are found by an inquest to be of unsound mind, and whose estate is consigned, by an order of court, to commissioners, for its management and preservation. It would be inconsistent with the nature and object of such a commission, to allow the party subject to it to alien or control in any manner the management of his estate, during its continuance. This, however, is a disability created by the order of court awarding the commission consequent upon his insanity, and may continue long after the cause which gave rise to it has been removed. It is apparent, therefore, that this disability is not embraced by the saving in the statute, which applies alone to the disabilit}1-arising out of a state of insanity, or unsoundness of mind. Nor, as a matter of public policy, ought such a construction be given to the saving in the statute as would make it embrace it, even if it were, as we think it is not, susceptible of such a construction. The commission might be permitted to continue for an indefinite period after the person subject to it had been fully restored to his right mind, and thus the statute, which was enacted for the peace and repose of society, might be, to some extent, defeated in its salutary operation. The statute, therefore, began to run as soon as the disability of unsoundness of mind was removed, notwithstanding the commission was never superseded.
The general rule is, that when the statute begins, it continues to run until the bar becomes complete. Whenever the disabilities to which the saving applies, cease, the statute commences running, and continues to run, without intermission. In this respect there is no difference between the disability of insanity and any of the other disabilities mentioned in the statute. If *41 the statute begins to run, a subsequent state of insanity will not stop it from running; but it will continue to run on, notwithstanding the insanity of the person whose rights will be affected by the bar. (Doe vs. Shane, 4 Term Rep., 307; Angell on Limitation, 147 ; Colterall vs. Dutton, 4 Taunt., 825.)
The instruction which was given at the instance of the defendants, is objected to on the ground that it did not define, with sufficient precision, either what would constitute a removal of the disability, or what length of time the sanity should have continued, to have authorized an application of the statute of limitations in bar of the action.
We do not think that it is liable to this objection. It required the jury to believe that Clark had been restored to his right mind, and that not merely for a moment, or an hour, or a day, but for such a length of time as to have enabled him to have looked into his affairs, and to have instituted an action to recover his rights, before the statute of limitations could be applied as a bar. The expression, “ restored to his right mind,” meant, necessarily, the removal of his unsoundness of mind, and a return to a sane condition, and was sufficiently precise and explicit in defining what was necessary for the jury to believe, before the bar could be applied. The length of time that this state of sanity must have continued, was also sufficiently designated. Its continuance must have been for such a length of time as to have enabled him to have looked into his affairs, and to have instituted an action to recover his rights. What length of time would have been necessary for that purpose, was a question of fact for the jury to determine, upon a view of all the circumstances of the case. If he were restored to his right mind, time to have enabled him to have looked into his affairs, and to have brought an action to have recovered his rights, would necessarily have been time enough to have looked into them understandingly. Whether or not he had been restored to his right mind, was a question of fact exclusively for the determination of the jury, and, in our opinion, their verdict is sustained by the testimony.
The record establishing the last will and testament of Clarkj does not seem to have been objected to as evidence in the *42 court below, and, consequently, it cannot be objected to in this court.
As the judgment will have to be affirmed upon the merits, it is unnecessary to decide whether the action was properly earned on in the name of the executor, after having been commenced in the names of other persons, or whether for that reason the judgment for the defendants must have been affirmed, even if the instructions of the court had been erroneous.
Wherefore, the judgment is affirmed.