## OTIS CHAMBERLIN v. HENRY ESTEY AND OTHERS.

### [IN CHANCERY.]

*Trust. Ward. Statute of Limitations. Insane Person. Costs. Cross–Bill.*

The orator was trustee under a deed of trust, acting from 1865 to 1880. He boarded his ward, who was *non compos mentis*, acted as his guardian, though not legally appointed, and owed him a note of $800, given in 1864, which was not a part of the trust property. The trust property consisted of real estate, which, on the death of the beneficiary, if he left no children, was to be divided between the heirs of the grantor, the trustee being one of them. The beneficiary having deceased, in settlement of the administration in a Court of Chancery between the trustee and the other heirs, *Held*,

1. The trustee can not plead the Statute of Limitations as a bar to the note he owed his ward.

2. Nothing more than the income of the trust property could be appropriated to the support of the ward until his other property was used up.

3. The annual balance of the trustee's appropriations in behalf of his ward above the income of the trust property the law will apply on said note.

4. Having come into a court of equity the trustee took with him all the incidents of his relations as individual debtor, guardian, &c.

5. *Costs.* A trustee having acted honestly, coming into court to render his account is entitled to his costs, and sometimes his attorney fees ; but the orator sought to avoid his own debt, and omitted to give credits which he could have stated, and thus put the defendants to expense to prove them, the Supreme Court refused to reverse the decision below, allowing neither party costs.*

6. R. L. s. 7, "insane person, *non compos* " ; s. 968, Statute of Limitations does not apply to insane,—construed.

BILL in Chancery.   Heard on bill, answers, replication, cross-bill, and master's report, December Term, 1882.   TAFT, Chancellor, decreed that there was due the orator in respect to the trust account $1,087.76 ;   that there was due him on the account that accrued before the death of the ward's father $183.46 ;   that there was due from the orator to the ward's estate on the note specified in the report $2,080.40 ;   that the balance due the ward's estate was $809.18 ;   that the orator pay this amount to the ward's administrator ;   and that commissioners be appointed to partition the trust estate.   The trust property was certain real estate in Pomfret.   The orator and his ward were brothers ;   Laban Chamberlin, the grantor of the trust deed, was their father ;   the orator and defendant Estey, the trustees;   and the orator and the other defendants were the heirs of said grantor.   The ward was *non compos mentis*.   Said Estey did not act.   The trust commenced in 1865, and terminated in 1880, on the decease of the ward. The following is a part of the trust deed :

"To have and to hold to the said Otis and Henry, their heirs and assigns, to and for the uses following, viz. : to the use of my son Dennis Chamberlin during his natural life, and in case he, the said Dennis, should marry a wife, then to his children if any there should be, to their own use and behoof forever, and if he the said Dennis should leave no children, then after his decease and a decent burial, whatever remains of said several pieces of land if any, to be equally divided between my children, Otis, Mary Ann and Alonzo L., and their heirs and assigns, to them and their own use and behoof forever."

The bill prayed substantially :

That an account may be taken of the amount and value of the board and care furnished and bestowed by the said Otis, as such trustee, to and

* As to costs, see *Ricker* v. *Clark*, 54 Vt. 300; *Joslyn* v. *Parlin*, Ib. 676.—REP.

for said Dennis, and the amount paid for necessaries for him, and for the other matters, as aforesaid; that said trust lands have become so incorporated with said Otis' lands that they cannot conveniently be separated or divided, and he prays that the value of the same may be ascertained in such way as this honorable court shall direct ; and that if such value is not found to exceed the amount of said Otis' claim as such trustee, that the absolute title to the same may be confirmed to said Otis ; or, if such value shall be found to be greater than the amount of said claim, that the said Otis may be permitted to pay to the heirs of said Alonzo L., their just proportion of such excess in value, and that the absolute title to said lands may thereupon be confirmed to the said Otis, and that the said defendant may be decreed to deed, by way of quit-claim deed or deeds, duly executed, to the said Otis, all right, title and interest in them, or either or any of them in and to said lands, which they have or can or may have, under and by virtue of said trust deeds, and that the absolute title to said lands may be decreed to said Otis and his heirs.

Defendant Estey did not appear. The other defendants answered and filed a cross-bill. In this they claimed that the orator owed the ward an $800 note, given March 1st, 1864 ; that the income of the trust property was sufficient to support the ward ; but if not, that the balance should be applied on the note ; and prayed for partition of the trust property. The orator claimed in his answer to the cross-bill that the Statute of Limitations was a bar to the note. The master allowed the orator for boarding &c., his ward after he assumed the trust, $1,087.76 ; account before he assumed the trust, $183.46 ; the note due the ward's estate,- $2,080.40.

The master reported, in part :

" The principal controversy before the master was as to how much the said Otis should be charged for the use of said trust property, and as to how much he should be allowed for the board and care of the said Dennis." . . . . .

" The master finds that the said Dennis at the time of the date of said note and ever afterwards was a person entirely incapable and unfit to have the care of his pecuniary affairs ; that this was well known to the said Laban and to the said Otis ; that the said Otis assisted his father in the care and control of the said Dennis, and after the death of his father took the entire care and control of the said Dennis and of his property, and acted as trustee and guardian of the said Dennis from the death of the said Laban to the death of the said Dennis ; that it was the desire of the said Laban that after his death the said Otis should take the charge and control of the said Dennis and of his property. This the master infers from said deeds. That such arrangement was considered preferable to the legal appointment of a guardian for the said Dennis ; that the said Otis did take and accept such trust and acted as such trustee and guardian from the death of said Laban so long as said Dennis lived ; that this guardianship was assumed and maintained by the said Otis

without appointment or authority from any court, and the said Dennis acquiesced in such assumed guardianship." . . . . .

" The master being governed by the findings aforesaid, and taking into consideration the accounts, board and care and use of trust property, each year by itself strikes yearly balances and casts simple interest on such balances up to the first day of December, 1882, and finds and reports that there is due the said Otis in respect to said matters last aforesaid the sum of," &c.

It appeared that an administrator and commissioners had been appointed on the estate of said Dennis ; that the administrator had been made a party to this proceeding ; that the orator presented an account that accrued before his appointment as trustee to said commissioners ; that the administrator presented in offset the said $800 note ; that the commissioners found a large balance against the orator ; that their report was accepted by the Probate Court, and judgment rendered thereon.; that the orator took an appeal, and the appeal was now pending ; and that the effect of the Statute of Limitations on the note was submitted by the master to the court. The other facts are stated in the opinion.

*William E. Johnson,* for the defendants.

The trust property cannot be appropriated until the trustee has fully paid his own debt due Dennis' estate. Before the trustee can ask equity he must do equity. The note is not barred by the Statute of Limitations. 2 Story Eq. s. 1365. A *non compos* is an "insane person." R. L. s. 7. Section 968, R. L., prevents the statute from running in case a person is insane. And as the object of this provision of the act was to save the rights of those who have not legal capacity to protect them, those who are deprived of that capacity, from whatever cause it may arise, are included within its provisions. That provision of the act should evidently be liberally construed, and should include all cases that are within its spirit, as well as its letter. *Bliss* v. *C. & P. R. R. R. Co.,* 24 Vt. 425.

*French & Southgate* and *N. Paul,* for the orator.

This suit is brought to have the account of the trustee settled and adjusted. A Court of Chancery is the proper court. 1 Story Eq. s. 465. The master finds due the orator $1,087.76 for board

and care of Dennis, while he was trustee. We insist he is enti-
tled to a decree to be paid out of the trust property for this:
First, the note is in process of adjustment in a court of law;
second, it is outlawed. The account having accrued, and the note
having been given, before the deed of trust took effect, they should
be adjusted in a court of law. The parties can have full and
adequate remedy at law. The Statute of Limitations is pleadable
in equity. 1 Story Eq. s. 529; Perry Trusts, s. 871; 12 Pet.
32, 56. The orator is entitled to his costs, including solicitor's
fees. Hill Trustees, s. 552; *Moore* v. *Jones*, 23 Vt. 739; *R. R.
Co.* v. *Miller*, 47 Vt. 146.

The opinion of the court was delivered by

VEAZEY, J. As Dennis Chamberlin had property of his own,
consisting of a debt of $800 due from the trustee Otis Chamber-
lin, and evidenced by a promissory note, he was not entitled
under the trust deed to have anything more than the income of
the trust property appropriated to his use until his own estate was
used up in his support. Therefore, there being sufficient practi-
cally in the hands of the trustee Otis to meet all his demands for
Dennis' support and care, Otis is not entitled to have the amount
which the master has found he has appropriated for this purpose,
in addition to the income of the trust property, made a charge
thereon. The trustee entered upon his trust in 1865, and con-
tinued therein until the decease of Dennis in October, 1880. Dur-
ing all this time he was owing said note of $800 to Dennis, upon
which no payments have been made. Dennis being, as the master
finds, " considerably deaf, with an intellect so weak and feeble
that he was unable to learn to read writing, . . . and entirely
incapable and unfit to have charge of his pecuniary affairs," was
*non compos mentis*, and Otis, his brother, though not appointed,
yet acted as his guardian. Dennis being under this disability the
Statute of Limitations would not run against him. Sections 7 and
968, R L. But, independent of the exception in the statute as
to persons *non compos*, Otis being the trustee and guardian, and
throughout this trust and guardianship owing said note to Dennis,
could not have the benefit in this proceeding of the Statute of Lim-

itations. As between trustee and *cestui que trust*, in the case of an express trust, the Statute of Limitations has no application, and no length of time is a bar. Perry on Trusts, section 863, and cases cited. Although Otis was not trustee of this note, that is, although there was strictly no express trust as to it, yet Otis having assumed to act as Dennis' guardian generally, he owed a duty to his ward as to this note. Chancery will always exercise great diligence in protecting the interests of wards, and especially when those interests come in conflict with those of the guardian. It would be gross inequity to allow Otis to plead the Statute of Limitations to his note due his *non compos* ward, in this proceeding, when, during the life of the note, he had a constantly accruing claim in his own favor against the ward.

We think the trustee had the right to come into a Court of Chancery to render and settle his account. It is peculiarly the province of that court to administer and adjudge in such matters. He had not acted as trustee or guardian by appointment of the Probate Court, and was not before that court as trustee in a regular proceeding to settle his trust account. But having resorted to a court of equity to settle and discharge his trust, he necessarily took with him all the incidents of his relations, individual as well as official, to the trust estate. He invoked the utmost scrutiny of the court to his relation as individual debtor of the ward as well as to his acts of administration. He at the same time held three relations to Dennis, that of debtor, of guardian, and of trustee under the deed.

If Otis had known exactly what the annual balance of his appropriations in behalf of Dennis, above the income of the trust property was, it would have been his duty to apply such balance annually on said note. He had the use of the trust property and boarded Dennis in his family, but had no right to fix the value of such use or the price of such board ; therefore, he could not tell what to apply on the note. These values having been determined by the master and the annual balances found, the law will make the application just as parties competent to treat with each other could have made it, and as it would have been the duty of Otis to make it, if he had known the amount, to apply. Both parties

complain of the decree below as to costs, which were allowed to neither party. There is no controversy as to the general rule that when a trustee, who has acted honestly and in good faith, comes into court to render his account, he is entitled to his costs and sometimes even his attorney fees. Each party invokes this rule in support of the respective complaints as to the decree in respect to costs. The defendants make no complaint as to the orator's administration of the trust, but do complain because he sought to make the amount due him, independent of the amount he owed Dennis, a charge upon the trust property and to avoid his own debt, and omitted to give many credits which he could have stated, and thus put the defendants to expense to prove them. We think there was enough of this to warrant the chancellor in denying the orator costs.

The general rules as to costs in cases of this kind are well defined, but it is not often that any one of them so exactly applies to a particular case as to be controlling. No two cases are alike. The application of the rules must rest in the sound judgment of the court in view of all the facts and circumstances of the case. Trustees differ almost indefinitely in degrees of honesty and capacity. Administrations vary in difficulty to very great extent. An omission or neglect culpable in one case might be excusable in another. Very much wrong conduct by persons in positions of trust is inadvertent, arising from lack of knowledge of duty or bad advice, or misapprehension of facts.

Looking at this case as a whole and all its features, we are inclined to think that it was a proper one for a division of costs, and that the decree of the chancellor should not be disturbed in that respect.

The decree of the Court of Chancery is reversed, and the cause remanded with a mandate pursuant to the foregoing views.