2005 VT 77

## Virginia Fila v. Spruce Mountain Inn and Candace Beardsley

[885 A.2d 723]

No. 03-530

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed August 5, 2005

*Allison A. Ericson* of *Law Offices of Daniel M. Sedon, P.C.*, Chelsea, for Plaintiff-Appellant Cross-Appellee.

*John Davis Buckley* and *Laura Q. Pelosi* of *Theriault & Joslin, P.C.*, Montpelier, for Defendant-Appellee Cross-Appellant.

¶ 1. **Skoglund, J.** Plaintiff Virginia Fila appeals from a superior court judgment in favor of defendants Spruce Mountain Inn (SMI) and Candace Beardsley. Plaintiff contends that, in granting judgment as a matter of law in favor of defendants, the trial court: (1) applied an incorrect standard in determining whether plaintiff was incapacitated for purposes of tolling the statute of limitations; (2) erroneously ruled that the question of plaintiff's incapacity was an issue for the court rather than the jury to decide; and (3) mistakenly concluded that plaintiff failed to satisfy the standard for tolling the statute of limitations. We agree with the first two contentions, and therefore reverse and remand for further proceedings.

¶ 2. Viewing the evidence in the light most favorable to the judgment, as we are required to do, *Gero v. J.W.J. Realty*, 171 Vt. 57, 59, 757 A.2d 475, 476 (2000), the essential facts may be summarized as follows. SMI is a residential facility for individuals with psychiatric problems who, in the words of its assistant director, "have had trouble living independently in the community." Plaintiff entered the facility in

December 1995. She was twenty-three years old at the time, but already had a long history of psychiatric problems, including nine prior hospitalizations for mental illness. SMI staff acknowledged that during her stay plaintiff was continually troubled by flashbacks, anxiety, and depression, and had at least one dissociative episode.

¶ 3. Plaintiff testified that, in late December 1995, while in residence at SMI, she took an overdose of a prescribed sedative, and later awoke to find a male patient in her bed having sex with her. Although the sexual relationship continued briefly thereafter, plaintiff testified that it was nonconsensual and that she did not remember the incidents clearly, suggesting that she was in a dissociative state most of the time. Plaintiff reported the incidents to SMI staff, and the male resident was asked to leave, but plaintiff believed for many years thereafter that she was at fault for the alleged sexual assaults.

¶ 4. Plaintiff discovered that she was pregnant in February 1996, and shortly thereafter was compelled to leave the residential program because of insurance problems. She remained under SMI care, however, and SMI staff assisted plaintiff in finding an apartment in the community, arranging medical appointments, and managing her affairs. Despite their assistance, plaintiff became depressed and suicidal and was hospitalized for a week to ten days in April 1996. The following month, plaintiff left the SMI program. Her departure was against medical advice, her case manager taking the view that outpatient therapy was insufficient to meet plaintiff's needs.

¶ 5. In September 1996, plaintiff moved with her mother and other family members to North Carolina, where she received substantial assistance from both her family and the state social services agency in obtaining obstetric care and parenting services for herself and her child. Several months after the move, however, plaintiff again required involuntary hospitalization. Indeed, over the next several years, plaintiff was periodically hospitalized on almost fifty separate occasions, an average of about once a month, during which times plaintiff's family assumed full responsibility for her child.

¶ 6. In October 2000, plaintiff moved with her mother and sister to New York. Plaintiff testified that while in therapy there she came to understand that she had been sexually assaulted at SMI. She contacted a lawyer and learned that she might have a claim against SMI. In March 2001, she filed this action against SMI and its director, Candace Beardsley, alleging negligent supervision, among other claims. Defendants thereafter moved for summary judgment, asserting that plaintiff's claim was barred by the three-year statute of

limitations. Although plaintiff agreed that the cause of action had accrued in late January 1996, and that the statute of limitations would normally have expired in January 1999, she asserted in opposition to the motion that the statute had been tolled from the date of accrual to the end of October 2000 under 12 V.S.A. § 551(b), which provides that "the time during which [a] person is insane shall not be taken as part of the time limited for the commencement of [an] action."[1]

¶ 7. The trial court (Judge Cheever) denied defendants' motion for summary judgment, as well as a subsequent motion to reconsider, on the ground that genuine issues of material fact remained in dispute. At the close of plaintiff's case, however, the trial court (Judge Cook) granted defendants' motion for judgment as a matter law, ruling that the question of whether plaintiff was insane within the meaning of the statute was for the court rather than the jury to decide; that there was "no evidence in this case that she has ever, for example, been psychotic or delusional or suffered from any of the major mental illnesses"; and that despite plaintiff's frequent hospitalizations, her actions and decisions were not those of a person "who is floridly mentally ill," and did not support her assertion of the tolling provision. The court therefore dismissed plaintiff's negligence claim as time-barred, and allowed the trial to proceed on plaintiff's remaining fraud claims. The jury reached a deadlock on those claims, however, and the court declared a mistrial. Plaintiff has appealed on the statute of limitations issue. Defendants have cross-appealed two of the court's evidentiary rulings. We address the claims in turn.

¶ 8. Plaintiff first contends the trial court applied an erroneous standard of "insanity" under § 551. We agree. This Court has held that the definition of "insanity" under § 551 is whether a person's "mental disability makes him unable to manage his business affairs or estate, or to comprehend his legal rights and liabilities." *Goode v. State*, 147 Vt. 646, 646, 514 A.2d 322, 322 (1986) (mem.). Numerous other states

---

[1] Section 551 provides in its entirety as follows:

(a) When a person entitled to bring an action specified in this chapter is a minor, insane or imprisoned at the time the cause of action accrues, such person may bring such action within the times in this chapter respectively limited, after the disability is removed.

(b) If a person entitled to bring an action specified in this chapter becomes insane after the cause of action accrues but before the statute has run, the time during which the person is insane shall not be taken as a part of the time limited for the commencement of the action.

apply an equivalent standard. See, e.g., *Storm v. Legion Ins. Co.*, 665 N.W.2d 353, 370-71 (Wis. 2003) (noting "consensus definitions in other states" for determining whether statute of limitations should be tolled typically include "the inability to manage one's own personal affairs" or an inability to "protect one's legal rights"). Although the trial court here made passing reference to plaintiff's ability "to make decisions about her life," the record discloses that it focused principally on the absence of evidence of a "major mental illness" or "psychosis" or other evidence normally associated with the higher standard for criminal insanity. Accordingly, we conclude the trial court applied an erroneous legal standard in determining that plaintiff was not "insane" for purposes of tolling the statute of limitations under § 551.

¶ 9. Plaintiff next contends the trial court erred in ruling that the question of plaintiff's insanity under 12 V.S.A. § 551 was an issue for the court rather than a jury to decide. We agree that the court erred. It is well settled in Vermont that factual questions relating to the tolling of a statute of limitations are for the jury to decide. See *Galfetti v. Berg, Carmolli & Kent Real Estate Corp.*, 171 Vt. 523, 526, 756 A.2d 1229, 1232 (2000) (mem.) (determination of when plaintiff actually discovered or should have discovered injury is generally a factual determination for jury); *Lillicrap v. Martin*, 156 Vt. 165, 172, 591 A.2d 41, 44 (1989) (question of when injury was or reasonably should have been discovered is generally one of fact for jury to determine); *Monti v. Granite Sav. Bank & Trust Co.*, 133 Vt. 204, 209, 333 A.2d 106, 109 (1975) ("Whether or not the defendant's claim of a bar of the action by the statute of limitations had merit, as well as whether or not there was actual or constructive fraud, were both questions of fact which would have to be decided by the jury."); *In re Estate of Delligan*, 111 Vt. 227, 239, 13 A.2d 282, 289 (1940) (holding that court erred in failing to properly instruct jury on statute of limitations).

¶ 10. Indeed, this common law principle may be gleaned from some of the earliest reported cases in Vermont. See, e.g., *Smith v. Hubbard*, 1 Tyl. 142, 144 (1801); *Hayes v. Morse*, 8 Vt. 316, 318 (1836); *Hackett v. Kendall*, 23 Vt. 275, 277 (1851); *Stearns v. Adm'r of Stearns*, 32 Vt. 678, 680 (1860); *Sprague v. Ainsworth*, 40 Vt. 47, 50 (1867); *Smith v. Town of Franklin*, 61 Vt. 385, 387 (1889). The rule, currently codified in 12 V.S.A. § 551, that a statute of limitations is tolled during the period when a person is legally incompetent or insane is also of longstanding vintage under the common law. *Lincoln v. Norton*, 36 Vt. 679, 680 (1864); *Chamberlin v. Estey*, 55 Vt. 378, 382 (1883); *Kumar v. Hall*, 423 S.E.2d 653, 658 (Ga. 1992) (citing R. Pound, *The History of the*

*Common Law* 444 (1913)); 2 H. Wood, A Treatise on the Limitation of Actions at Law and in Equity § 239, at 578 (2d ed. 1893).

¶ 11. It is hardly surprising, therefore, that whether a person is legally incompetent or insane for purposes of tolling the statute has also long been considered a question of fact to be determined by the jury. See, e.g., *Tracy v. Atherton*, 36 Vt. 503, 506-07 (1864) (recognizing principle that party's infancy, if found by the jury to exist at time defendant's use of property began, would toll time for adverse possession akin to tolling of statute of limitations); *Clark's Ex'r v. Trail's Adm'rs*, 58 Ky. (1 Met.) 35, 40-41 (1858) (in determining whether statute of limitations was tolled due to plaintiff's "disability of unsoundness of mind," decision "[w]hether or not [plaintiff] had been restored to his right mind, was a question of fact exclusively for the determination of the jury"); *Steelman v. Steelman*, 16 N.J.L. 66, 71 (1837) ("Whether Francis Steelman was under such a degree of mental incapacity as would save his claims from being barred, under the proviso, in favor of persons insane, in the statute of limitations, was a question of fact . . . ."); *Burnham v. Mitchell*, 34 Wis. 117, 134-35 (1874) (upholding charge to jury on question of whether party was legally insane within meaning of statute of limitations); see generally 3 J. Story, Commentaries on Equity Jurisprudence as Administered in England and America § 1788, at 397 (14th ed. 1918) (in determining asserted "idiocy or lunacy" of party, "[t]he inquisition is always had and the question tried by a jury, whose unimpeached verdict becomes conclusive upon the fact").

¶ 12. We have interpreted the right to jury trial under chapter I, article 12 of the Vermont Constitution[2] to guarantee the right to those types of controversies that would have been tried to a jury at the time of the adoption of the constitution. *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 155, 624 A.2d 1122, 1125 (1992). It is clear from the cases and authorities cited above that a party's asserted insanity for purposes of tolling the statute of limitations falls within this category of questions traditionally reserved to the jury. Accordingly, assuming that sufficient evidence was adduced to raise a factual issue, we conclude that

---

[2] This provision states: "That when any issue in fact, proper for the cognizance of a jury is joined in a court of law, the parties have a right to trial by jury, which ought to be held sacred." Vt. Const. ch. I, art. 12.

plaintiff here was entitled to have the question of her competence under § 551 resolved by the jury.[3]

¶ 13. Despite the trial court's errors in deciding this issue, the question nevertheless remains whether, as our dissenting colleague maintains, we may affirm the judgment on the ground that no reasonable jury could have found for plaintiff on the issue of her capacity to bring suit under § 551. See *Gero*, 171 Vt. at 59, 757 A.2d at 476 (judgment as a matter of law may be granted where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party). In resolving this question, we must view the evidence in the light most favorable to the nonmoving party and exclude the effect of any modifying evidence. *Id.* If there is any evidence that "fairly and reasonably supports the nonmoving party's claim," including "every reasonable inference that may be drawn from the evidence," the granting of judgment as matter of law would be improper. *Lockwood v. Lord*, 163 Vt. 210, 212, 657 A.2d 555, 557 (1994).

¶ 14. In addressing this question, we note at the outset that the trial court — while ostensibly ruling on a motion for judgment as a matter of law — did not purport to find that there was insufficient evidence to submit to the jury. Rather, having determined that the question of

---

[3] Although we have not previously addressed the issue, we note that numerous courts from other states have reached the same conclusion. See, e.g., *Doe v. Roe*, 955 P.2d 951, 965 (Ariz. 1998); *Terry v. Sullivan*, 58 P.3d 1098, 1101 (Colo. Ct. App. 2002); *Morris v. Sloan*, 1997 ME 179, ¶ 2 n.3, 698 A.2d 1038; *Riley v. Presnell*, 565 N.E.2d 780, 788 (Mass. 1991); *Makarow v. Volkswagen of Am., Inc.*, 403 N.W.2d 563, 565-66 (Mich. Ct. App. 1987); *Storm v. Legion Ins. Co.*, 665 N.W.2d 353, 371 (Wis. 2003). Although some courts appear to have concluded otherwise, their rationale suggests that they characterize the issue as a preliminary question to a basic legal issue. See, e.g., *Roe v. Gelineau*, 794 A.2d 476, 481 (R.I. 2002) (noting that trial court may need to decide "certain preliminary facts before moving on to decide the question of law," namely whether plaintiff had "unsound mind" sufficient to toll statute of limitations); see also *Shillady v. Elliot Cmty. Hosp.*, 320 A.2d 637, 639 (N.H. 1974) (holding that underlying factual issues relating to tolling of statute of limitations under discovery rule involve traditionally legal or "equitable considerations" best decided by trial court); *Lopez v. Swyer*, 300 A.2d 563, 567 (N.J. 1973) (observing that "application of the statute of limitations is ordinarily a legal matter" and opining that fact questions relating to accrual of statute of limitations under discovery rule "can better be done by a judge than by a jury"). While we have also recognized that preliminary questions underlying such legal issues such as choice of law, jurisdiction, and competency of witnesses are properly the province of the court, *Amiot v. Ames*, 166 Vt. 288, 294, 693 A.2d 675, 679 (1997), as discussed above we have consistently held that decisive factual questions relating to the discovery of an injury and the tolling of the statute of limitations are to be decided by a jury. Our conclusion here is consistent with this principle.

plaintiff's alleged incapacity was for the court to decide, it engaged as the presumed trier of fact in a weighing of the conflicting evidence, ultimately concluding that plaintiff had failed to carry her burden of demonstrating that she was insane, albeit under an erroneous legal standard. Viewed as a presumptive jury question, however, the trial court's findings and the record as a whole leave no doubt that plaintiff had adduced sufficient evidence to submit the issue to the jury at the close of her case.

¶ 15. To be sure, the evidence and findings disclose that most of the basic facts were undisputed. What was disputed was the meaning and the reasonable inferences to be derived from those facts relative to plaintiff's capacity to manage her business affairs or comprehend her legal rights. See *Davidson v. Baker-Vander Veen Constr. Co.*, 192 N.W.2d 312, 318 (Mich. Ct. App. 1971) ("[E]ven if there is no dispute concerning the underlying historical facts, it is ordinarily for the trier of fact to decide a question requiring an appraisal of the reasonableness or quality of a person's behavior or actions . . . ."). Indeed, the trial court here prefaced its findings by noting the difficulty of summarizing several days of extensive testimony. It found, however, that several facts were clear. It was apparent that plaintiff had experienced regular periods of emotional crisis for the better part of her adult life, had been diagnosed with a personality disorder, had suffered from severe depression, and had engaged in suicidal ideation. Plaintiff's care providers at SMI attested that plaintiff had a history of extreme depression and sexual abuse, had attempted suicide prior to her admission, had been treated with electroconvulsive therapy, and had been diagnosed with a borderline personality disorder. The same providers also testified that, while a patient at SMI, plaintiff had experienced dissociative episodes and, on one occasion, had cut herself with a razor and failed to remember the incident. Further, during the several years after she left SMI, plaintiff testified, and the court found, that she had been hospitalized as often as once or twice a month, for periods ranging from three to ten days, for a total of 135 days, and had not held a job.

¶ 16. As the dissenting opinion observes, and the court here found, there was also evidence suggesting that plaintiff was not insane under the *Goode* standard. She had received social security disability benefits and lived for a period of time in an apartment after she left SMI; she contacted an ob/gyn in North Carolina when she moved there with her family; she cared periodically for her child; and she enrolled for about a month in a nursing program where she received good grades. Yet

there was evidence suggesting that such apparent "independence" was misleading. SMI staff acknowledged that they had assisted plaintiff in finding the apartment, applying for housing assistance, setting up and accompanying her to physician's appointments after plaintiff became pregnant, and helping her with other basic skills that she lacked. Plaintiff testified that her disability benefits were arranged for her by her father and treating physicians, and that her family had helped her obtain substantial social services in North Carolina, without which she would not have been able to care for her child. Plaintiff further explained that she had spent about a month in a nursing program learning to make beds and wash patients, but left the program after a very short enrollment because of stress. As for plaintiff's repeated post-SMI hospitalizations (estimated at fifty), the trial court found — and the dissent apparently agrees — that their significance is limited to proof of incapacity during the actual time spent in hospital (about four and one-half months). This assumes, however, that plaintiff immediately regained competence at the end of each hospitalization and maintained it until the next, whereas an equally plausible inference from such frequent commitments is that plaintiff was experiencing chronically incapacitating mental distress resulting in continual crises. See *Lockwood,* 163 Vt. at 212, 657 A.2d at 557 (party opposing motion for judgment is "entitled to every reasonable inference" from record evidence).

■ ¶ 17. The question before us, however, is not whether plaintiff proved at trial that she was incapable of managing her affairs. The question is whether, viewed in the light most favorable to plaintiff, and disregarding the effect of any modifying evidence, she adduced sufficient evidence for a reasonable jury to find in her favor on the question. *Brueckner v. Norwich Univ.*, 169 Vt. 118, 122, 730 A.2d 1086, 1090 (1999). There is no doubt, in our view, that plaintiff met this standard. Viewed in the light most favorable to plaintiff, and including the benefit of every reasonable inference, the record evidence summarized above would allow a reasonable jury to find that plaintiff was not able to manage her affairs from the period of her residence at SMI in December 1995 until late 2000, when plaintiff acknowledges that her mental health began to improve. Therefore, a jury could have found that the statute of limitations was tolled during this period, and that the complaint, filed in March 2001, was timely.

¶ 18. The several cases on which defendants and the dissenting opinion rely do not support a contrary conclusion, as each involved factual circumstances or a legal standard critically distinguishable

from the case at bar.[4] More on point are cases such as *Harrington v. County of Ramsey*, 279 N.W.2d 791 (Minn. 1979), where the plaintiff filed an untimely complaint for medical malpractice that allegedly occurred while she was involuntarily committed in the state psychiatric hospital. The plaintiff was subsequently released and recommitted over the next several years, but also married and divorced, had a child, and obtained temporary employment. Although the trial court concluded that plaintiff's periods of apparent capacity to work, marry, and engage in daily transactions defeated any tolling claim, the Supreme Court of Minnesota reversed, finding that a "genuine issue exist[ed] as to plaintiff's sanity" based on plaintiff's multiple intermittent commitments for mental illness, suicide attempts, and chronic depression. *Id.* at 796-97; see also *Adkins v. Nabors Alaska Drilling, Inc.*, 609 P.2d 15, 24 (Alaska 1980) (observing that the "fact that Adkins could actively work for sometime after the accident, travel, obtain workmen's compensation benefits and retain an attorney might support an inference that Adkins was not 'insane,' but this is an issue to be decided at trial"); *Doe*, 955 P.2d at 965 (holding that evidence of the plaintiff's ability "to manage any of her daily affairs" does not conclusively negate a tolling claim based on insanity where other credible evidence showed that the plaintiff had experienced suicidal ideation, required therapy and institutionalization, was unable to work, and was in denial about her alleged sexual abuse); *Bestwina v. Village Bank*, 767 P.2d 338, 340 (Mont. 1989) (plaintiff's pursuit of social

---

[4] *Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000), involved a claim for equitable tolling under federal law, which was rejected by the court based on the inadequacy of the plaintiff's bare assertion that he suffered from paranoia, panic attacks, and depression. Plaintiff's troubled mental health history in the instant case was corroborated by others, as was her need for assistance in managing her daily affairs, and plaintiff's testimony concerning her multiple hospitalizations was undisputed. Although *Todish v. CIGNA Corp.*, 206 F.3d 303, 305-06 (3d Cir. 2000), which involved a plaintiff with a history of mental health difficulties and several hospitalizations, is superficially similar to the case at bar, the evidence of the plaintiff's overall resilience and capacity to manage her affairs was overwhelming. During the period in question, she had personally applied for social security benefits three times, sought reconsideration of one denial of benefits and later retained counsel to appeal, applied to and was accepted into law school, applied for disability benefits, worked as a teacher in three community colleges, and completed most of the requirements for a master's degree. The facts here are obviously distinguishable. Finally, *Swartz v. Berkshire Life Insurance Co.*, No. 99 Civ. 9462, 2000 WL 1448627, at *4 (S.D.N.Y. Sept. 28, 2000), involved the application of a different standard of insanity under New York law, which the court there described as "quite narrow" and requiring a "severe impairment of the plaintiff's ability to think and function."

security and workers' compensation benefits "does not conclusively establish an absence" of mental illness sufficient to toll the statute of limitations where other evidence showed that plaintiff had been hospitalized at least six times for depression and that drug and electroconvulsive therapy had been ineffective).

¶ 19. These cases are noteworthy not because they necessarily support plaintiff's particular claim under the statute, but because they show the rich variety of circumstances in which such claims may arise, and which can only fairly be resolved by the trier of fact unless the evidence unequivocally fails to support the claim. Although the dissent would hold that the evidence is so one-sided that we may preempt the jury's proper role in this case, the record does not — in our view — support such a conclusion. Whatever our opinion of its ultimate persuasive value, the evidence at the very least was sufficient to submit to a jury. Therefore, the trial court judgment must be reversed, and the matter remanded for further proceedings.

¶ 20. Defendant SMI has raised two additional claims on cross-appeal as alternative grounds for affirmance. First, SMI contends the court erred in denying its motion for summary judgment and motion for judgment as a matter of law based on plaintiff's failure to adduce expert evidence in support of its claim that SMI provided negligent supervision. The issue was not, however, raised in the motion for summary judgment, and SMI has adduced no persuasive authority to support the proposition that expert evidence was required to show the level of care required of a residential care facility to protect its residents from rape. See, e.g., *Zuniga v. Healthcare San Antonio, Inc.*, 94 S.W.3d 778, 783 (Tex. App. 2002) (action for negligent supervision by patient who was raped by another resident while involuntarily committed in state psychiatric hospital did not involve medical treatment or require expert evidence); *Virginia S. v. Salt Lake Care Ctr.*, 741 P.2d 969, 972 (Utah Ct. App. 1987) (observing that in negligence action by disabled teenager who was raped while patient at nursing home "there are no medical technicalities involved that call for expert testimony to determine whether the nursing home breached its standard of care"); see also *Mast v. Magpusao*, 225 Cal. Rptr. 689, 691-92 (Ct. App. 1986) (action for negligent failure to protect nursing home resident from assault by fellow resident did not require expert evidence to establish standard of care); *Juhnke v. Evangelical Lutheran Good Samaritan Soc'y*, 634 P.2d 1132, 1136-37 (Kan. Ct. App. 1981) (guardian's action against nursing home for negligent failure to protect ward from assault by fellow patient involved standard of care

within common knowledge and experience of lay jurors and did not require expert evidence); *Commercial Distribs., Inc. v. Blankenship*, 397 S.E.2d 840, 845 (Va. 1990) (expert testimony not required in negligent supervision action by representative of mentally ill resident of licensed home for adults who committed suicide); *McGraw v. St. Joseph's Hosp.*, 488 S.E.2d 389, 396 (W. Va. 1997) (expert testimony not "mandatory" to support patient's action against hospital for negligent supervision that allowed patient to fall).

¶ 21. Second, SMI contends the court erred in denying its motion in limine to preclude plaintiff from claiming that another resident of SMI was the father of her child. SMI claims that the only admissible evidence of parentage was genetic testing under the parentage statutes, but SMI offers virtually no authority or persuasive reasoning to show why these statutes and the evidentiary standards set forth therein would apply outside the context of a parentage action. Accordingly, we discern no error requiring reversal on this basis.

*The judgment is reversed, and the matter remanded for further proceedings consistent with the views expressed herein.*

¶ 22. **Reiber, J.,** dissenting. I agree with the majority that the trial court applied an erroneous definition of "insanity" under 12 V.S.A. § 551. I respectfully disagree, however, with the majority's holding that the trial court erred as matter of law when it held that insufficient evidence existed to send the issue to the jury under Vermont Rule of Civil Procedure 50. Other than the periods of hospitalization, plaintiff did not submit enough evidence to warrant consideration by the jury. To the contrary, the record demonstrates that she understood legal issues involving paternity, child support, Medicaid, and adoption; made doctor appointments; found an apartment; and attended a community college. I agree with the majority that the standard here for the trial court to apply was whether plaintiff's disability made her unable to manage her affairs or to comprehend her legal rights. *Goode v. State*, 147 Vt. 646, 514 A.2d 322 (1986) (mem.) (*Goode I*). But, because the evidence here was insufficient to require the trial court to submit the issue to the jury, I would affirm.

¶ 23. In reviewing the decision of the trial judge on the Rule 50 motion, and applying the correct standard to the evidence submitted by plaintiff at trial, the majority draws an inference of disability from plaintiff's periods of hospitalization and concludes that this evidence was sufficient to warrant submission of the question of insanity to the jury. Although plaintiff is entitled to every reasonable inference drawn

from the record, *Lockwood v. Lord*, 163 Vt. 210, 212, 657 A.2d 555, 557 (1994), any inference we make must be based on the evidence in the record and cannot be based on speculation. See *McGreevy v. Daktronics, Inc.*, 156 F.3d 837, 840-41 (8th Cir. 1998) ("A reasonable inference is one which may be drawn from the evidence without resort to speculation. When the record contains no proof beyond speculation to support the verdict, judgment as a matter of law is appropriate." (internal quotations omitted)). In reviewing a Rule 50 motion, therefore, we cannot assume facts that are not in the record, nor can we make unreasonable inferences.

¶ 24. Here, while there was testimony regarding plaintiff's periods of hospitalization, the inference that plaintiff was unable to manage her business affairs or estate, or to comprehend her legal rights and liabilities while not hospitalized, is based on speculation. In the aggregate, plaintiff was hospitalized four and one-half months over four years. It was not disputed at trial that plaintiff was not competent during these periods. For the remaining time, plaintiff had the burden of introducing sufficient evidence of insanity to warrant the trial court submitting the issue to the jury. Without additional evidence, the hospitalizations alone were insufficient to support inferences of insanity for the periods of nonhospitalization. The majority asserts that the periods of hospitalization create an "equally plausible inference" of chronic distress affecting plaintiff's competency during the time when she was not in the hospital. *Ante*, ¶ 16. However, without more, such equivalency is insufficient to sustain plaintiff's burden on this record. Without other evidence, such as opinion testimony, plaintiff's time in the hospital is insufficient proof by itself to create the inference that she was insane during the periods of nonhospitalization.

¶ 25. The cases relied upon by the majority illustrate this point. In *Harrington v. County of Ramsey*, 279 N.W.2d 791, 796-97 (Minn. 1979), the court held that genuine issues of material fact existed regarding the plaintiff's insanity. Unlike the present case where plaintiff introduced no evidence of mental disability for her time outside the hospital, the plaintiff in *Harrington* introduced an affidavit from a doctor stating that her disorder made her unable to institute a legal claim. In *Doe v. Roe*, 955 P.2d 951, 964 (Ariz. 1998), another case relied upon by the majority, the court required "hard evidence" of the plaintiff's condition. *Doe* involved a plaintiff who delayed bringing a case due to allegedly having repressed her memory of severe sexual abuse. In holding that genuine issues of material fact existed regarding whether the plaintiff had an unsound mind and was unable to under-

stand her legal rights, the court reviewed and relied on scientific literature that explained how sexual abuse could cause a person, like the plaintiff, to repress memories and prevent her from even knowing that such events took place. *Id.* at 956-58, 965, 968. Here, plaintiff submitted no opinion evidence to support her claim that she was insane while not hospitalized. To the contrary, the proof at trial, described below, demonstrates that she was aware of her circumstances and the choices available to her even while she was a patient at SMI. See *Nolde v. Frankie*, 964 P.2d 477, 483 (Ariz. 1998) (holding that, based on *Doe*, plaintiffs' claim of insanity could not withstand summary judgment because plaintiffs' and experts' affidavits regarding plaintiffs' abilities to manage their affairs and to understand their legal rights were merely conclusory, and plaintiffs made no other claim to justify the delay in filing).

¶ 26. The record reveals the following facts. First, plaintiff provided the sole testimony regarding her claimed mental illness for the periods of nonhospitalization between her discharge from SMI in October 1996 to March 7, 2001. Alone, her testimony is insufficient to create a question of fact under the *Goode I* standard. See *Goode v. State*, 150 Vt. 651, 652, 553 A.2d 142, 143 (1988) (mem.) (noting that plaintiff's only evidence was his own testimony, and in light of the evidence, plaintiff failed to meet his burden of proof). Second, plaintiff testified that she suffered from depression, yet provided no other evidence to confirm her self-diagnosis. Moreover, depression does not necessarily rise to the level of insanity. See *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (discussing equitable tolling under the Rehabilitation Act and concluding that the plaintiff's statement that she was suffering from "paranoia, panic attacks, and depression" was insufficient); *Swartz v. Berkshire Life Ins. Co.*, No. 99 Civ. 9462, 2000 WL 1448627, at *5 (S.D.N.Y. Sept. 28, 2000) (stating that severe depression does not rise to the level of insanity for purposes of New York's tolling provision). Finally, in 1998, plaintiff was competent enough to enroll for one month in a nursing program at a community college.

¶ 27. In addition, at trial there were facts adduced surrounding the time she was hospitalized that reflect that plaintiff understood her rights. While plaintiff resided at SMI in 1996, she discussed the legal consequences of establishing paternity, abortion, adoption, and child support. At trial, her case manager at SMI testified that "[s]he was an adult and she was competent" but that she "was vulnerable to making poor decisions on her own behalf." While at SMI, plaintiff was able to find, and later to live in, an apartment, contact social workers, arrange

doctor appointments, and comprehend the legal consequence of serving a minor alcohol when her case manager informed her about the child's father's suspension from SMI.

¶ 28. In light of the foregoing, an inference of insanity is not supported under our standard for periods of nonhospitalization arising out of the times during which plaintiff was hospitalized. Our standard of review requires us to determine whether plaintiff adduced sufficient evidence, drawing every reasonable inference in her favor. Our Court and the trial court, however, can make inferences only based upon evidence in the record and cannot assume facts. Here, plaintiff failed to meet her burden of proof because she submitted insufficient evidence of her condition during her periods of nonhospitalization, and we cannot make the inferential leap for her. For failure to sustain her burden, I would conclude that her negligence claim against SMI is time barred.