Filed 09/03/25

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-05354

---

### K.S. et al v. Vermont Department of Children and Families et al

---

## ORDER ON MOTION TO DISMISS AND MOTION TO SEAL

Currently pending before the court is a motion by defendants Vermont Department for Children and Families (DCF), Matthew Bergeron, and Kathryn Bergeron to dismiss the amended complaint and a motion by plaintiffs K.S. and N.L. to file under seal, for a protective order, and to proceed under pseudonyms. Oral argument on the motion to dismiss was held on May 20, 2025, after which the court requested further briefing on the motion to seal, which was completed on July 21, 2025. For the reasons set forth below, the motion to dismiss is granted and the motion to seal is granted in part.

### Background

Plaintiffs K.S. and N.L. filed an amended complaint alleging ten causes of action against DCF and two of its former employees Kathryn Bergeron and Matthew Bergeron. Unless otherwise noted, the summary is based on the allegations in the amended complaint.

K.S. is the biological mother of N.L. When N.L. was a baby, he was placed in the custody of his maternal aunt (K.S.'s sister). By order dated May 21, 2003, the Probate Court appointed the aunt to be K.S.'s guardian. The order noted that a hearing was held the same date and that both K.S. and N.L.'s putative biological father were present at the hearing, as was Kathryn Bergeron on behalf of Department of Social and Rehabilitation Services (the predecessor to DCF). The order included "findings of facts" that recite concerns of suspected physical abuse by N.L.'s putative father, domestic violence, K.S.'s limited cognitive ability, and neglect by K.S. According to the amended complaint, these factual findings were based on a narrative provided by Ms. Bergeron and not by any sworn testimony or other evidence admitted at the hearing. Nonetheless, the order stated, "Based on clear and convincing evidence, the Court finds that [N.L.] has no parent now competent and suitable to have custody of his person, that a guardianship is in his best interest, an that [maternal aunt] is a suitable person to serve as guardian." Def.' Mot. to Dismiss, Exh. B.

 N.L. thereafter lived with his maternal aunt, who abused and neglected him. In 2012, the aunt was criminally charged with crimes including assault and cruelty to a child. The complaint alleges, without specifics, that between 2003 and 2012, defendants worked to

keep K.S. from seeing N.L. The complaint further alleges that Matthew Bergeron, Kathryn's son and also a DCF employee, had a romantic relationship with N.L.'s maternal aunt during this time including when he was purportedly visiting the aunt's home to check on N.L.'s welfare.

DCF filed a petition alleging that N.L was a child in need of supervision in 2012. The Caledonia Family Court subsequently issued temporary care order placing N.L. in DCF's custody, and thereafter terminated K.S.'s parental rights in order to free N.L. for adoption. No provision was made for ongoing parent-child contact between N.L. and K.S. The Vermont Supreme Court affirmed the Family Court's termination decision. *In re J.S.*, No. 2012-477, 2013 WL 2631208 (Apr. 2013) (unpub. three-justice entry order). After N.L. turned 18, he reunited with K.S. and lived with her for several years.

Plaintiffs filed this action in December 2023. As amended, plaintiffs' complaint pleads the following causes of action:

1. Violation of Article 11 of the Vermont Constitution, by N.L. against DCF;

2. Violation of the Fourth Amendment of the U.S. Constitution, by N.L. against DCF;

3. Negligence, by N.L. against DCF

4. Intentional infliction of emotional distress, by K.S. and N.L. against all defendants;

5. Negligent supervision, by N.L. against DCF;

6. State-created danger, by N.L. against DCF;

7. Breach of fiduciary duty, by N.L. against DCF;

8. Aiding and abetting breach of fiduciary duty, by N.L. against Matthew Bergeron and Kathryn Bergeron;

9. Defamation, by K.S. against all defendants; and

10. Wrongful interference with custody, by K.S. and N.L. against all defendants

Defendants have moved to dismiss the amended complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim for which relief can be granted under Rule 12(b)(6).

## Analysis

### 1. Motion to Dismiss

A complaint should be dismissed under Rule 12(b) "only if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420 (quotation omitted). In considering a motion to dismiss, the court construes alleged facts and draws all reasonable inferences

from those alleged facts in favor of the non-moving party. *Id.* On a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings." *Vt. Hum. Rts. Comm'n v. Town of St. Johnsbury*, 2024 VT 71, ¶ 6. On a Rule 12(b)(6) motion, the court must determine "whether the bare allegations of the complaint are sufficient to state a claim," and in so doing, may consider documents relied on in the complaint and subject to judicial notice." *Sutton v. Purzycki*, 2022 VT 56, ¶ 20, 217 Vt. 326; *Birchwood Land. Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420.

At the outset, all of K.S.'s claims are time-barred. "In Vermont, the general statute of limitations for civil actions is six years." *Dep't of Forests, Parks & Recreation v. Town of Ludlow Zoning Bd.*, 2004 VT 104, ¶ 6, 177 Vt. 623 (citing 12 V.S.A. § 511). Claims for "injuries suffered by the act or default of another person" are subject to a three-year statute of limitations. 12 V.S.A. § 512(4). All of the conduct alleged in the complaint related to K.S.'s claims occurred before 2013 when the termination of her parental rights to N.L. was affirmed by the Vermont Supreme Court—approximately ten years before this action was filed. Plaintiffs argue that K.S.'s claims are saved by 12 V.S.A. § 522(a), which provides that [a] civil action brought by any person for recovery of damages for injury suffered as a result of childhood sexual or physical abuse may be commenced *at any time* after the act alleged to have caused the injury or condition." 12 V.S.A. § 522(a) (emphasis added). But this statute relates to actions brought by a victim against an abuser. *See, e.g.*, 12 V.S.A. § 522(c) (defining "abuse" as acts "committed by the defendant against a complainant who was under 18 years of age at the time of the act"). Even if Section 522 applied to claims brought by non-victims who suffered injuries, none of K.S.'s claims—intentional infliction of emotional distress, defamation, and wrongful interference with custody—seek "recovery for damages for injury suffered as a result of child sexual or physical abuse." *See* 12 V.S.A. § 522(a). Accordingly, the court concludes K.S.'s claims are time-barred.

The court further concludes that N.L.'s claims for unlawful seizure in violation of the state and federal constitutions fail to state a claim for which relief can be granted. Although the removal of a child from parental custody may constitute a "seizure" for constitutional purposes, a court order satisfies the warrant requirement. *See E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 366 (S.D.N.Y. 2010), *aff'd sub nom. E.D. ex rel. Demtchenko v. Tuffarelli*, 408 F. App'x 448 (2d Cir. 2011).To the extent N.L. argues the 2003 Probate Court order itself was an unlawful seizure by DCF, the court is unpersuaded. Whatever procedural irregularities may have occurred in the probate proceedings, DCF never "seized" N.L. during those proceedings. Rather, as alleged in the amended complaint and reflected in the Probate Court's order, DCF advocated for the creation of a private guardianship with N.L.'s maternal aunt, who is not alleged to be state employee, in a judicial proceeding in which K.S. participated. *Compare Torres v. Madrid*, 592 U.S. 306 (2021) (explaining, for Fourth Amendment purposes, that a seizure of a person requires "force" or acquiring "physical control" over the person). DCF never obtained actual physical or legal control over

N.L. until the guardianship was terminated and DCF filed for emergency custody in family court. At oral argument, plaintiffs conceded they were not arguing that an unconstitutional seizure occurred in connection with the later Family Court litigation that placed N.L. in DCF custody.

N.L.'s claim for wrongful interference with custody fails because N.L. did not have custody over himself and accordingly has no potential claim for interference with his own custodial rights. *See Jenkins v. Miller*, No. 2:12-CV-184, 2017 WL 4402431, at *9 (D. Vt. Sept. 29, 2017) ("Since Isabella was not a parent, and did not have custody, she cannot make out this claim herself."), *reconsidered on other grounds*, 2018 WL 11418392 (D. Vt. Aug. 29, 2018); *see also* Restatement (Second) Torts § 700 ("One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, *is subject to liability to the parent*." (emphasis added)). Although plaintiffs appear to be correct that the Vermont Supreme Court has not yet adopted this Restatement definition, this court anticipates that it would if presented with the question. *See Dewdney v. Duncan*, 2025 VT 26, ¶ 10 (2025) ("We generally will follow the Restatements unless there is a strong rationale to the contrary." (quotation omitted)).

This leaves N.L.'s claims for negligence, intentional infliction of emotional distress, negligent supervision, state-created danger, and breach of fiduciary duty against DCF; and N.L.'s claims for intentional infliction of emotional distress and aiding and abetting breach of fiduciary duty against Matthew and Kathryn Bergeron.

To prevail on any of these claims, N.L. must overcome the State's sovereign immunity and the exclusive right of action provision in the Vermont Tort Claims Act.

The "States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution," *PennEast Pipeline Company, LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (citation omitted), and was retained as part of the country's "original constitutional design." *Franchise Tax Bd. of Calif. v. Hyatt*, 139 S. Ct. 1485, 1496 (2019). The Founders of the Constitution intentionally preserved this immunity to foreclose "private suits against nonconsenting States." *Alden v. Maine*, 527 U.S. 706, 756 (1999). This is because "[a] State is entitled to order the processes of its own governance, assigning to the political branches, rather than the courts, the responsibility for directing the payment of debts." *Id.* at 752.

The State may, in "limited circumstances," be sued by a private party if the State "consents to suit, although such consent must be 'unequivocally expressed.'" *See PennEast Pipeline Co.*, 141 S. Ct. at 2258. Any waiver of the State of Vermont's sovereign immunity "must be accomplished expressly by statute." *Jacobs v. State Teachers Ret. Sys. of Vt.*, 174 Vt. 404, 408 (2002). A waiver of a state's sovereign immunity must "be strictly construed, in

terms of its scope, in favor of the sovereign." *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

Through the Vermont Tort Claims Act, the State has enacted a "limited waiver" of its sovereign immunity and consented to be sued for certain "recognized causes of action, particularly for common law torts." *Kennery v. State*, 2011 VT 121, ¶ 26, 191 Vt. 44; *Johnson v. Agency of Transp.*, 2006 VT 37, ¶ 5, 180 Vt. 493. The Tort Claims Act specifically provides that "[t]he State of Vermont shall be liable for injury to persons or property or loss of life caused by the negligent or wrongful act or omission of an employee of the State while acting within the scope of employment, under the same circumstances, in the same manner, and to the same extent as a private person would be liable." 12 V.S.A. § 5601(a). But the Tort Claims Act carves out an exception from this waiver—in other words, Vermont has expressly decided *not* to waive the State's immunity—from "[a]ny claim based upon an act or omission of an employee of the State exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a State agency or an employee of the State, whether or not the discretion involved is abused." 12 V.S.A. § 5601(e)(1). This is known as the discretionary function exception.

Moreover, under the Act, only the State—not individual state employees—may be sued based on an "act or omission of an employee of the State acting within the scope of employment," unless the claim is based on "gross negligence or willful misconduct." 12 V.S.A. § 5602(a)(b).

Defendants argue that all the remaining claims are barred by the State's sovereign immunity because they fall within the discretionary function exception set forth at 12 V.S.A. § 5601(e)(1). The Vermont Supreme Court recently described this exception at length:

> We apply a two-part test to determine whether a plaintiff's claim is barred by the discretionary function exception to tort liability. The first prong requires us to determine whether the challenged act or omission involves an element of judgment or choice. If a statute or regulation or policy specifically prescribes a course of action for an employee to follow, then the discretion requirement is not met. We have explained that acts furthering policy decisions fall within the discretionary function exception only if there is a range of discretion to exercise in deciding how to carry out that decision. While the discretionary function exception shields the State from liability for administrative and policymaking decisions, it will not excuse the State from liability for failure to act when required or for failure to use reasonable care when executing ministerial tasks in furtherance of a discretionary undertaking.

If the act is discretionary in nature, the second prong of the test requires the court to determine whether that judgment involved considerations of public policy which the discretionary function exception was designed to protect. The purpose of the discretionary function exception is to assure that the courts do not invade the province of coordinate branches of government by passing judgment on legislative or administrative policy decisions through tort law. It is presumed that when a government agent is authorized to exercise discretion, their acts are grounded in policy when exercising that discretion. If the State's action involves negligence unrelated to policy objectives, then the second prong of the discretionary exception test is not satisfied. While the State must act with due care with regard to ministerial acts implementing policy decisions, the discretionary function exception shields discretionary acts that further a protected policy decision when there is a range of discretion to exercise in deciding how to carry out the activity. The exception applies to such acts whether or not the discretion involved is abused.

*Stocker v. State*, 2021 VT 71, ¶¶ 24-25, 215 Vt. 432 (quotations omitted).

According to the Amended Complaint, all of N.L.'s remaining claims "arise from [the maternal aunt's] abuse of [N.L.], which Defendant's knew or should have known of, yet failed to prevent or remedy even though they had affirmative duties to prevent such abuse by the guardian Defendants required be appointed." Am. Compl. § 37. The overlapping allegations in each of these counts allege defendants removed N.L. from K.S.'s custody without a proper basis, used the probate proceedings to obtain a guardianship, and then failed to protect N.L. against abuse by N.L.'s guardian.

Defendants' alleged conduct, described above, was discretionary insofar as it involved a matter of judgment or choice and there was no specifically prescribed course of action set forth in statute. Plaintiffs argue that defendants had a mandatory duty to conduct a "proper investigation" and "find clear and convincing evidence of parental unfitness before a child is removed from their parent's custody." Pls.' Opp. 34. But what constitutes a "proper" investigation, and whether a formal investigation should even be opened, "implicates the kind of policy judgment that fit within the discretionary function exception to the State's waiver of sovereign immunity." *Stocker*, 2021 VT 71, ¶ 28, 215 Vt. 435. The same goes for DCF's decisions with respect to how it managed its employees, which is a "quintessentially discretionary act." *See Blecher v. Holy See*, 146 F.4th 206, 218 (2d Cir. 2025) (discussing cases applying analogous standard under Federal Tort Claims Act and Foreign Sovereign Immunities Act). And any obligation to make factual findings by a particular evidentiary standard before ordering a change in custody rests with the courts that made the relevant custody determinations, subject to appellate review, not with

defendants. Notably, there is no non-conclusory allegation in the Amended Complaint that any defendant was aware that N.L. was being abused or neglected and failed to report it.

In short, the Amended Complaint alleges that DCF and its employees engaged in discretionary conduct in furtherance of DCF's policy goals related to child protection. At most, plaintiffs allege that DCF abused its discretion in the course of N.L.s Probate and Family Court proceedings. Because such claims fall within the discretionary function exemption, plaintiff's claims for negligence, intentional infliction of emotional distress, negligent supervision, state-created danger, or breach of fiduciary duty, are barred by the State's sovereign immunity.

With respect to the individual defendants, the Amended Complaint does not allege any relevant conduct against Kathryn Bergeron that appears to fall outside the scope of her employment with DCF or involved gross negligence or willful misconduct.

Likewise with Matthew Bergeron, except for the allegation that he engaged in a romantic or sexual relationship with N.L.'s maternal aunt while purportedly visiting the family home as part of his responsibilities with DCF. That plainly falls outside the scope of his employment. *Compare Wyatt v. City of Barre*, No. 2:11-CV-00297, 2012 WL 1435708, at *8 (D. Vt. Apr. 25, 2012) ("Assuming [plaintiff's] allegations to be true, [Fire Department employee's] sexual advances could not, as a matter of law, be said to be within the scope of his employment."). The allegation of an intimate relationship, however, does not support any of the claims that plaintiffs have pled against Mr. Bergeron.

As discussed above, any claim by K.S. is time-barred. N.L. cannot bring a claim for wrongful interference with his own custody. To the extent there can be aiding and abetting liability when the underlying breach of fiduciary duty claim is barred by sovereign immunity, the allegation of an intimate relationship, standing alone, does not support liability. A claim for aiding and abetting a breach of fiduciary duty generally requires, among other things, "that the defendant knowingly induced or participated in the breach." *See Heibert v. Bank of America, N.A.*, 835 F. App'x 627, 631 (2d Cir. 2020) (discussing New York law, quotation omitted). The Amended Complaint does not contain any factual allegations that permit the conclusion that Mr. Bergeron "knowingly induced or participated" in a breach of fiduciary duty owed by DCF to N.L. Likewise the mere existence of the intimate relationship alleged here does not support liability for intentional infliction of emotional distress. While the circumstances of the relationship are concerning, without more detailed factual allegations, the court cannot reasonably conclude the relationship was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable" or, critically, that Mr. Bergeron's purported conduct "actually or proximately caused" N.L.'s injuries. *See Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395.

### 2. Motion to Seal

When plaintiffs filed their original complaint, they contemporaneously filed a motion to seal and proceed using pseudonyms. In an order dated December 22, 2023, the court (per Judge Richardson) granted the motion in part and ordered that the initial complaint be kept under seal, that further briefing be had on the motion, and that a hearing on the motion be scheduled. Following a May 2024 status conference, the court deferred ruling on the motion to seal until the State filed its response, which it never did until recently. Due to briefing on defendants' motion to dismiss, plaintiffs filing an amended complaint, and judicial rotation, the matter was not taken up again until May 20 when a hearing was held on the motion to dismiss, and the court raised the issue again and ordered defendants to respond to the motion. In the meantime, the entire case file has remained sealed, and all the filings have been unredacted. Defendants subsequently responded to the motion to seal and indicated they did not object to sealing the case records.

Under the circumstances, the court orders that all the previous filings in this case remain sealed as they identify the parties using their full names and many reference or attach confidential juvenile records, but that the case itself be unsealed and the case caption be amended to identify plaintiffs by their initials. This order, which also uses plaintiffs' initials, shall be publicly available. Given these protections and the current status of the case, there is no basis to permit the use of pseudonyms. *See generally* V.R.P.A.C.R. 9.

### Order

The motion to dismiss is GRANTED.

The motion to seal is GRANTED IN PART.

Electronically signed on: 8/29/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge